UNITED STATES DISTRICT COURT
DISTRICT MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | CRIMINAL |
| ) | NO.: 19-10345-DPW |
| ) | Leave to File |
| ANNE M. LYNCH, ) | Granted on May 11, 2021 |
| Defendant. ) | |

DEFENDANT ANNE M. LYNCH'S REPLY TO GOVERNMENT'S
OPPOSITION TO HER MOTION TO DISMISS THE INDICTMENT IN PART

Defendant, Anne M. Lynch, (hereinafter "Lynch"), by and through undersigned counsel, respectfully submits this Reply to the Government's Motion to Dismiss certain counts and parts of the indictment.

I. THE GOVERNMENT'S PRIVATE ASSOCIATION ARGUMENT BELIES THE INDISPUTABLE FACT THAT PULLMAN IS A PUBLIC OFFICER.

The government's first argument in its Opposition implicitly concedes that G.L. c. 271, § 39(a) applies only to the conduct of public officials. However, in a sleight of hand that would make Harry Houdini envious, the government argues that because SPAM is a private association and the racketeering acts in question were limited to Pullman's conduct as SPAM president, G.L. c. 271, § 39(a) applies to his conduct.

The material fact that the government neglects to mention or fails to disclose is that Pullman was always acting as a State Police Officer and his status as a State Police Officer was an essential condition precedent to his qualifications to be SPAM's president. Indeed, if Pullman was not a State Police Officer, he could not be elected to the position of President.

1

In short, the government cannot have it both ways. Pullman cannot be a public officer and private employee at the same time and, in some cases, in the same counts. See Indictment, Counts I & II. Moreover, the cases cited by the government in support of its meritless argument actually support Lynch's argument that the crime only applies to employees in the private sector. Thus, the government's contorted argument has no merit and should be rejected by the Court.

    II.    THE GOVERNMENT OFFERS NO RESPONSE TO DEFENDANT LYNCH'S ARGUMENT THAT UNDISCLOSED SELF-DEALING IS NOT WITHIN THE SCOPE OF § 1346.

In Skilling v. United States, 561 U.S. 358, 405-410 (2010) the Supreme Court specifically rejected a proposal by the government to construe § 1346 as encompassing "undisclosed self-dealing by a public official" even when he hid financial interests. Id. at 409. The upshot is that federal fraud law leaves much public corruption to the States to rectify.

Notably, the government makes no counter argument in its Opposition to Lynch's argument that undisclosed self-dealing is not within the scope of 18 U.S.C. § 1346. Instead, the government argues that the indictment alleges "bribes and kickbacks." Interestingly, the government does not distinguish between a bribe and a kickback. Also, the government does not state whether Pullman's self-dealing constituted a bribe or a kickback. They cannot be both. If they could, there would be no need for two different words to describe these different crimes. In any event, the government's linguistic gymnastics do not save the day. In Skilling, the Supreme Court specifically rejected the government's theory in this case that undisclosed self-dealing is within the scope of § 1346. Skilling v. United States. 561 U.S. 358, 409 (2010). Accordingly, the honest services fraud counts and conspiracy to commit honest services fraud should be dismissed by the Court.

### III. THE INDICTMENT DOES NOT SUFFICIENTLY ALLEGE A BRIBERY SCHEME OR A KICKBACK SCHEME.

Similarly, the government's Opposition glosses over the fact that the indictment does not distinguish between a bribery and a kickback scheme when, in fact, it alleges neither. Notably absent from the allegations in the indictment is any *quid pro quo* by Pullman in exchange for any payment by Lynch. In addition, the indictment does not allege that Pullman and Lynch agreed, in exchange for Pullman referring work to her lobbying firm, that she would share a portion of her profits with him. On the contrary, the government alleges the payments were both a bribe and a kickback, which leads inevitably to the question – were they a bribe or a kickback? Clearly, they cannot be both.

Moreover, the government's argument that the indictment alleges Pullman agreed to accept the $20,000 "upon an agreement and understanding that such payment would influence Pullman's conduct" in paragraph 72 of the indictment misses the point. Said allegation is set forth in support of the government's erroneous claim that the Massachusetts commercial bribery statute, G.L. c. 271, § 39(a) applies in this case. See indictment, ¶¶ 72, 73, 76, 77, 80 81. This allegation is not contained in any of the honest services counts or wire fraud counts. See Indictment ¶¶ 71, 75, 79 and 83.

### IV. THE INDICTMENT DOES NOT SUFFICIENTLY ALLEGE A WIRE FRAUD SCHEME.

In its Opposition the government states unequivocally that "Clearly, Pullman's statements to Companies A and B touting the benefits of hiring Lynch and the Lobbying Firm required the disclosure of Defendants' secret bribe and kickback scheme so as not to be misleading" citing United States v. Carpenter, 781 F.3d 599 (1st Cir. 2015). However, unlike the present case, the

3

government in <u>Carpenter</u> did not prosecute the case on a theory of fraud by omissions. In <u>Carpenter</u>, the government's theory was that the marketing materials and agreements contained affirmative misleading statements. <u>Id</u>. at 620. Thus, <u>Carpenter</u> does not support the government's failure to disclose theory in this case.

Moreover, the government does not challenge the fact that Pullman's statements to Companies A and B were not affirmative misrepresentations. Rather, based on their failure to disclose theory or fraud by omissions theory, the government does confront the critical issue in this case – did Pullman or Lynch have an affirmative duty to disclose the payments made to Pullman to Company A and Company B?  Indeed, the government's Opposition dismisses defendant's citation to the <u>United States v. Milovanovic</u> because it was an honest services fraud case and not a wire fraud case.  However, the government misses the point. The point is that a duty to disclose arises under the honest service fraud theory because a non-disclosure is a breach of a fiduciary duty.  Even though the government does not have to prove a breach of a fiduciary duty in a wire fraud prosecution, the government still must prove that either Lynch or Pullman had an affirmative duty to disclose whatever arrangement they had to Company A or Company B under its theory of fraud by omissions.  Indeed, all that Company A and B were interested in was the Lobbying Firm's ability to advocate on their behalf.

In <u>United States v. Cassiere</u>, 4 F.3d 1006, 1022 (1st Cir. 1993), the First Circuit approved the following instruction in a duty to disclose or fraud by omission case:

> A failure to disclose a material fact may also constitute a false or fraudulent misrepresentation if, one, the person was under a general professional or a specific contractual duty to make a disclosure; and two, the person actually knew such disclosure ought to be made; and three, the person failed to make such disclosure with the specific intent to defraud.

In this case, neither Lynch nor Pullman were under a general professional or a specific contractual

4

duty to make a disclosure to Company A or Company B.  Moreover, there is no allegation in the indictment that Lynch knew she was under a duty to disclose.  In these circumstances, where there were no affirmative misrepresentations (as there were in Carpenter) and where there is no duty to disclose, Lynch submits that the indictment does not sufficiently allege a wire fraud scheme.  See also Neder v. United States, 527 U.S. 1, 20-23 (1999) ("[w]e hold that materiality of the falsehood is an element of the federal mail fraud, wire fraud and bank fraud statutes.").

> V. IF THE INDICTMENT SUFFICIENTLY ALLEGES AN HONEST SERVICES FRAUD OFFENSE, THEN THE HONEST SERVICES FRAUD STATUTE IS UNCONSTITUTIONALLY VAGUE AS APPLIED IN THIS CASE.

Assuming for the sake of argument that the indictment does sufficiently allege both a bribery and kickback scheme even though it does not distinguish between these two crimes, then 18 U.S.C. § 1346 is unconstitutionally vague as applied in this case.  Without repeating the arguments contained in defendant's Memorandum in Support of her Motion to Dismiss, § 1346 criminalizes "a scheme or artifice to deprive another of the intangible right of honest services."  Looking at the language from the view of Anne Lynch, what does this mean?  What does a lay person know about an "intangible right."  What does a lay person know about "honest services."  Indeed, how can the average person know what this statute means when even the Justices on the Supreme Court cannot decide?  For example, does giving a friend a gift card for referring a client a crime under § 1346?  How about 100 gift cards with a value of $200 each?  Does accepting a gift card for referring a client a crime?  How about accepting 100 gift cards with a value of $200 each?  The answer may be that it depends on the prosecutor.  Kolender v. Lawson, 461 U.S. 352, 358 (1983) (requiring criminal statutes to establish minimal guidelines to govern law enforcement).  In sum, the McNally case was correctly decided.  The Skilling case was not.  Indeed, what this case demonstrates is that by using the words "bribes and kickbacks" the government can

proceed on a theory that is neither a bribe nor a kickback. Accordingly, defendant Lynch respectfully requests this Court to hold that § 1346 is unconstitutionally vague as applied to her in this case because the statute did not put her on notice that the payments made were prohibited by federal law.

Respectfully submitted,<br>
For Anne M. Lynch<br>
By her attorneys<br>
LAWSON & WEITZEN, LLP<br>
<br>
　/s/  Scott P. Lopez<br>
Scott P. Lopez, BBO # 549556<br>
Lawson & Weitzen, LLP<br>
88 Black Falcon Ave., Suite 345<br>
Boston, MA  02210<br>
(617) 439-4990 (tel)<br>
(617) 439-3987 (fax)<br>
splopez@lawson-weitzen.com

<u>Dated</u>:  May 24, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 24, 2021.

　/s/ Scott P. Lopez<br>
Scott P. Lopez