UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.             )<br>            )   Case No. 19-cr-10345-DPW<br>DANA A. PULLMAN and       )<br>ANNE M. LYNCH           )<br>            )<br>   Defendants.    ) | |

**GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE
EVIDENCE IMPERMISSIBLE CHARACTER EVIDENCE AND
<u>EVIDENCE CALCULATED TO INDUCE JURY NULLIFICATION</u>**

The United States respectfully seeks an *in limine* order excluding three categories of inadmissible evidence and argument amounting to impermissible good character evidence and evidence calculated to induce jury nullification:

First, evidence and argument that the government's investigation was allegedly initiated based on information from then-command staff of the Massachusetts State Police ("MSP") as retribution for defendant Dana Pullman's public criticisms of MSP command staff, or that others in the MSP are more corrupt or worse than the defendants, which would improperly encourage the jury to disregard the law and acquit the Defendants. Second, evidence of the Defendants' prior good acts, commendations, or accomplishments as either a police officer, union president, or lobbyist, would invite the jury to overlook the charged misconduct on the basis that it is counterbalanced by all the good the Defendants have purportedly done in their careers. Finally, any reference to the sentence of incarceration the defendants could receive if convicted would be offered purely to elicit sympathy and is therefore prohibited. The United States seeks this ruling prior to the start of trial because any reference to the foregoing evidence—including during *voir dire* or opening

1

statements—could result in prejudice that the Court would be unable to rectify simply by sustaining a timely objection.

## JURY NULLIFICATION

Jury nullification is a structural feature of our criminal justice system, but the First Circuit has made clear that "neither the court nor counsel should encourage jurors to exercise this power," and, "[a] trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993); *see also United States v. Bunchan*, 626 F.3d 29, 34 (1st Cir. 2010) ("Neither the court nor counsel should encourage jurors to exercise their power to nullify."); *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").

If an attorney may not openly invite the jury to ignore the law, it follows that more subtle attempts to achieve the same end, by offering evidence or argument calculated to induce jury nullification, must also be prohibited. *United States v. Manning*, 79 F.3d 212, 219 (1st Cir. 1996) ("We have consistently held that a district court may not instruct the jury as to its power to nullify. . . . An attorney's attempt to achieve the same end indirectly, by arguing the severity of the punishment to the jury, is equally impermissible.") (internal citations omitted). Following the First Circuit's guidance in *Manning*, district courts have regularly stepped in to preclude evidence or argument calculated to induce jury nullification. *See e.g., United States v. Ortiz-Graulau*, 526 F.3d 16, 20 (1st Cir. 2008) (ruling that district court properly excluded evidence that producer of child pornography had a consensual sexual relationship with the minor depicted in the photographs because the relationship was irrelevant to the charges at issue and "looks simply like

2

an effort to invite jury nullification"); *United States v. Gonzalez-Perez*, 778 F.3d 3, 19 (1st Cir. 2015) ("[B]y suggesting that there are worse people out there, and that the government should go after them and not after the poor and vulnerable, defense counsel was encouraging the jury to disregard the law and acquit González. Thus, the statements were aimed at jury nullification and the government's objections were properly sustained."); *United States v. Ahrendt*, 560 F.3d 69, 73 (1st Cir. 2009) (ruling that district court properly excluded evidence that the defendant sincerely believed that his religion entitled him to "the 'sacramental consumption' of drugs," explaining that "such testimony might invite jury nullification").

As a general matter, defendants should not be permitted to make arguments or offer evidence that invite jury nullification, including arguments or evidence about potential punishment, *see Manning,* 79 F.3d at 219, or that the charged conduct should not be a crime or should not be prosecuted because others have done the same thing, *United States v. O'Brien,* 18 F.Supp.3d, 25, 35 (D.Mass.2014). As the First Circuit ruled in *Manning*, such arguments are entirely improper. 79 F.3d at 219; *see also United States v. Apicelli*, No. 14-CR-012-01-JD, 2015 WL 3398139, at *1 (D.N.H. May 26, 2015) ("Evidence and argument about the defendant's potential punishment is not relevant to guilt or innocence and is an impermissible attempt to move the jury acquit despite the law").

### A. Evidence and Argument that Others in the MSP are More Corrupt or "Worse People" Amounts to Improper Jury Nullification.

One conceivable example of an impermissible jury nullification argument that may arise in this case involves defendant Dana Pullman's persistent criticisms of the MSP's command staff, including now retired Colonel Richard McKeon and Lt. Col. Francis Hughes,[1] over the

---

[1] While the government initially listed Hughes as a potential government witness, the government has subsequently determined that it will not be calling Hughes as a witness at trial.

public controversy involving the alteration of a police report regarding the arrest of the daughter of Massachusetts district court judge. Pullman may seek to elicit testimony and argue that he should not be found guilty because the conduct of the MSP command staff is far worse than his own, and more deserving of the jury's attention and punishment. This would include an argument and possible evidence that the federal investigation in this case was inappropriately predicated on the reporting of information about Pullman's conduct to federal investigators as retribution for Pullman's criticism of MSP command staff.

      Pullman was a vocal critic of the MSP's command staff when he was the President of the State Police Union of Massachusetts ("SPAM"). The most public example of Pullman's criticism was in relation to the October 2017 arrest of the daughter of a Dudley, Massachusetts district court judge for drunk driving and heroin possession, and the subsequent alleged falsification of the arrest report at the direction of MSP command staff. During a Fox 25 television interview following Lt. Colonel Hughes' retirement in November 2017, Pullman stated that SPAM had "triggered an internal affairs investigation yesterday afternoon and all of sudden, everybody is putting in their retirement papers. I don't know, you tell me."[2] The matter has been the subject of extensive investigation and litigation since 2017, and any foray into the events could result in an extensive and irrelevant side-show. *See* https://www.bostonglobe.com/2022/04/29/metro/former-state-police-head-three-others-violated-ethics-law-by-altering-arrest-report-judges-daughter-ethics-commission-alleges (summarizing several investigations, including three weeks of hearings before the state Ethics Commission).

---

[2] https://www.boston25news.com/news/deputy-superintendent-of-mass-state-police-retires-amid-lawsuits/647592866/

The government's concerns about an unwarranted side-show are not mere speculation. One former member of SPAM's executive board ("E-Board"), MSP Trooper Timothy Sullivan, told agents during the investigation leading to the instant charges that Pullman told him that Lt. Colonel Hughes started the investigation by going to the Federal authorities. When interviewed by federal agents in May 2018, another former E-Board member, MSP Trooper Timothy Gillespie, told agents that the Federal investigation into SPAM is nothing more than retribution for SPAM exposing corruption at the highest level of the MSP.

The suggestion that the defendants are not guilty because "more corrupt" or "worse people" have not been charged is a clearly improper argument. *United States* v. *Gonzalez–Perez,* 778 F.3d 3, 18–19 (1st Cir. 2015) ("by suggesting that there are worse people out there, and that the government should go after them and not after the poor and vulnerable, defense counsel was encouraging the jury to disregard the law and acquit . . . the statements were aimed at jury nullification and the government's objections were properly sustained"). The presentation of such a defense is also further complicated because the attorney who brought one of the lawsuits against Lt. Colonel Hughes and the MSP regarding the October 2017 incident was Leonard Kesten, one of the government's witnesses (and "SPAM Attorney #1" in the indictment) regarding the obstruction of justice charges. The evidence is simply not a defense to charges in the indictment and instead is an improper invitation to ignore the evidence and look elsewhere for more culpable players deserving of prosecution.

Likewise, how the investigation that led to this prosecution was initiated is irrelevant to whether or not the Defendants committed the crimes with which they are charged. Such an argument – which essentially amounts a claim of selective prosecution or vindictive prosecution – should have been raised long before trial in this matter, and should be decided by the Court, not

a jury. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."); *United States v. Bassford*, 812 F.2d 16, 20 (1st Cir. 1987) ("Vindictive prosecution occurs when the actions of the judge or prosecutor somehow punish a defendant for exercising constitutional or statutory rights during the prosecution.").

Regardless, even if there was marginal relevance to such evidence, it should be excluded as collateral, prejudicial, and confusing under Rule 403 of the Federal Rules of Evidence. *See e.g., United States v. McVeigh*, 153 F.3d 1166, 1191–92 (10th Cir. 1998) (excluding specious evidence of other possible culprits in Oklahoma City bombing under Rule 403 because of confusion of the issues, reasoning it would have forced the government to disprove nebulous allegations). A mini-trial into the events of October 2017 would not only be confusing to the jury, it has the potential to be prejudicial and it is entirely irrelevant to the charges the Defendants currently face.

  **B.**  **Character Evidence is Limited to Opinion and Reputation Testimony, and the Government May Cross-Examine Character Witnesses About Specific Instances and Introduce its Own Rebuttal Witnesses.**

A tempting and persuasive argument to any jury would be that the defendant should not be convicted because he or she is a good person, who did good things, and therefore could not have committed the crime. In this case, it is anticipated that the defendants may wish to introduce evidence and argument concerning their "good character" and specific instances that would evidence that purported proposition, including positive accomplishments that either Pullman or Lynch achieved for SPAM and its members. Because such evidence is irrelevant and inadmissible, it should be excluded. If the defendants seek to offer such testimony, Rules 404

and 405 of the Federal Rules of Evidence operate to: (a) restrict the scope of the witnesses' testimony on direct examination to reputation and opinion testimony regarding "pertinent" character traits; (b) allow the government to cross-examine the witnesses regarding their knowledge of relevant specific instances of the Defendants' past conduct; and (c) permit the government to call its own rebuttal witnesses.

> 1. *Defendants' Character Evidence Is Limited to Reputation and Opinion Testimony Regarding Pertinent Traits and May Not Include Any References to Specific Acts.*

Rule 404(a) generally controls the admissibility of character evidence, and in the first instance prohibits the introduction of evidence of an accused's character or trait of character to show that the person acted in accordance with it. Fed.R.Evid.404(a)(1). Rule 404(a)(2) provides one exception: a defendant may offer evidence of that defendant's character trait that is "pertinent" to the charges in the indictment. *See e.g., United States v. Navedo-Ramirez*, 781 F.3d 563, 569 (1st Cir. 2015) ("Rule 404(a) allows a criminal defendant to offer evidence of a 'pertinent' character trait"). If it is determined that character evidence is admissible, the form and method of its proof are governed by Rule 405. Fed.R.Evid. 405, Advisory Committee Notes, 1972 Proposed Rules (Rule 404 deals with admissibility, whereas Rule 405 deals with allowable methods of proof).

The word "pertinent" as used in Rule 404(a) is read as synonymous with "relevant." *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982). The basic issue, therefore, is whether the character trait in question would make any fact of "consequence to the determination" of the case more or less probable than it would have been without evidence of that character trait. Fed.R.Evid. 401; *Angelini*, 678 F.2d at 381. Testimony regarding character traits that are not relevant to the offenses charged should not be allowed.

Under Rule 405, testimony regarding the defendants' character – whether through the defendants' witnesses or cross-examination of the government's witnesses – must be restricted to testifying about the witness' opinion of the relevant character traits or their knowledge of defendants' reputation in that regard. They may not testify about specific instances of conduct. Fed. R. Evid. 405; *Michelson v. United States*, 355 U.S. 469, 477 (1948).

Under the foregoing principles, the defendants may not introduce evidence of their generally good character ─ *e.g.*, that he or she is a "good" police officer, union leader, or lobbyist. Nor can they put on evidence of specific acts of good conduct, such as charitable works or contract successes. *See, e.g., United States v. Langford*, 647 F.3d 1309, 1329 (11th Cir. 2011) (trial court properly barred evidence of a defendant's "generous and philanthropic character"); *United States v. Manfredi*, 2009 WL 3762966, at *2-6 (W.D. Penn. 2009) (precluding evidence of generosity as character evidence). In addition, the defendants may not offer evidence about specific commendations they may have received or other notable achievements; in fact, in prosecutions of police officers, commendations and evidence of the general competency have been held to be non-pertinent traits. *See, e.g., United States v. Boylan*, 898 F.2d 230, 255 (1st Cir. 1990) (excluding evidence of police commendations under Rule 405); *United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (commendations as police officers held not to be pertinent traits to the narcotics and bribery offenses charged); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (commendation while in military service and as police officer not held to be pertinent traits to mail fraud conspiracy and perjury offenses charged). In fact, i. *See e.g., United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (commendations as police officers held not to be pertinent traits to the narcotics and bribery offenses charged).

Further, under Rule 405(b), a defendant may only introduce relevant specific instances of conduct to prove a character trait when the defendant's "character or character trait is an essential element of a charge, claim, or defense[.]" Fed.R.Evid. 405(b). This is because while "evidence of specific instances of conduct is most convincing," it also "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Fed.R.Evid. 405, Advisory Committee Notes.

Rule 405(b) only permits a "searching inquiry" and evidence of specific instances of character when a character trait is an essential element of the charge, claim, or defense in a "strict sense." Fed. R. Evid. 405(b), Advisory Committee Notes. Here, the defendants' character for law abidingness and/or truthfulness are not essential elements of any crimes or predicate racketeering acts charged. *See e.g., United States v. White*, 737 F.3d 1121, 1137 (7th Cir. 2013) ("law abidingness, or lack thereof, [was] not an essential element of a wire fraud charge, nor a defense to it"); *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (defendant's character not an essential element in fraud case); *see also United States v. Lepore*, 2016 WL 4473125, at *7 (N.D.Ga. 2016) (in an honest services wire fraud prosecution, excluding character evidence that the defendants did not have a habit of bribing public officials, had not bribed others in the past, lacked any criminal history, and were generally good, law-abiding people); *United States v. Pomrenke*, 198 F.Supp.3d 648, 704–05 (W.D.Va. 2016) (in an honest services wire fraud prosecution, excluding as hearsay and impermissible character evidence, testimony that the defendant did a "commendable act by reporting misconduct" of another).

"Accordingly, Rule 405(b) forecloses a defendant from introducing evidence of specific instances of conduct to circumstantially prove their character was inconsistent with criminal intent. *United States v. McMahan*, 394 Fed.Appx. 453, 463, 2010 WL 3446852, at *9 (10th Cir.

9

2010); *citing United States v. Marrero,* 904 F.2d 251, 259–60 (5th Cir.1990) (holding a defendant may not use specific instances of conduct circumstantially to prove lack of intent).

The Rules of Evidence and the cases make clear that evidence of good conduct is simply not admissible to negate criminal intent. *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (excluding extrinsic evidence that the defendant operated other legitimate business activities). Evidence of specific acts to circumstantially to prove lack of intent is "not only disfavored, it is not permitted under Rule 405(b)." *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990).

Further, a defendant may not "seek to establish his innocence ... through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). A single occurrence of lawful conduct is "simply irrelevant" to occurrences of unlawful conduct. *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) ("Whether [the defendant] had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent.") (cited in *United States v. Chambers*, 800 Fed.Appx. 43, 46 (2d Cir. 2020) (defendant's "argument that his running of a legitimate law practice makes it less likely that he had corrupt intent to bribe . . . is precisely the type of propensity inference that Rule 404(b)(1) is intended to prohibit")). A leading treatise cited by Sixth Circuit Court of Appeals makes the point:

> a federal inspector charged with accepting a bribe from a meat packer can call a character witness to show his reputation for being honest, but he may not call other meat packers to testify that he did not solicit bribes from them.

*United States v. Silber*, 456 Fed.Appx. 559, 562 (6th Cir. 2012) (quoting 1 Kenneth S. Broun *et al.*, *McCormick on Evidence* § 191)

For this reason, evidence that the defendants did work, worked hard, and did nothing wrong in those other instances, is simply not a defense. Hard work did not legally justify the embezzlement of union funds, the receipt of illegal bribes and kickbacks, and the defrauding of companies that sought to do business with the MSP.

That presentation of the evidence, furthermore, is not limited to time when the government has closed its case, and the defense presents their case. The case law interpreting "case-in-chief" makes clear that a defendant's case-in-chief is not limited to the presentation of the evidence following the close of the government's case and includes "[t]he part of a trial in which a party presents evidence to support its claim or defense." *United States v. Kilmartin*, 2016 WL 6208379, at *2 (D.Me., 2016), *quoting United States v. Hsia*, 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000). As one district court explained:

> In the Court's view, when cross examining a government witness, a defendant is asserting the defense that the government cannot prove the required elements of the crime charged and thus is required to disclose any evidence it seeks to use to establish the failure of proof. On the other hand, the defendant is not required to disclose evidence used to impeach a government witness by, for example, showing a prior inconsistent statement. To hold otherwise, would effectively render Rule 16(b)(1)(A) a nullity unless a defendant asserted an affirmative defense or planned to put on his or her case after the government rested.

*United States v. Swenson*, 298 F.R.D. 474, 476–77 (D. Idaho 2014). Thus, to the extent that the defendants seek to introduce documents and records as substantive evidence (and not solely for impeachment purposes), the defendants should not be able to introduce evidence that is irrelevant and should require the defendants to produce copies of those exhibits pursuant to the defendants'

reciprocal discovery obligations under Rule 16(b)(1)(A) of the Federal Rules of Criminal Procedure.[3]

Thus, Rules 404 and 405 require that any character evidence offered by the defendants be exclusively limited to reputation or opinion testimony about pertinent traits such as truthfulness or general law-abiding character. As the Supreme Court stated, a defendant "may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged." *Michelson,* 335 U.S. at 476.

> 2. *If Evidence of the Defendants' Character is Offered on Direct, the Government May Cross-Examine the Defendants' Character Witnesses About Specific Instances of Conduct.*

Rule 405 ("Methods of Proving Character") limits how character evidence can be introduced. First, "[w]hen evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). In doing so, "a defendant is thus permitted to call a witness, establish his contemporaneous and relevant knowledge of the defendant's reputation, and elicit a favorable response." *United States v. Kinsella*, 545 F.Supp.2d 158, 161 (D. Me. 2008). Second, as set forth above, a defendant is generally not permitted to ask question about specific instances of good conduct or specific character traits. Fed. R. Evid. 405; *Michelson,* 335 U.S. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits....").

In the event either defendant seeks to introduce positive character evidence through their own witnesses or the government's witnesses, Rule 405(a) permits to the court to "allow [on

---

[3] When a defendant, as in this case, does not file a waiver of automatic discovery, the Local Rules make clear that states "the defendant shall be subject to the correlative reciprocal discovery obligations of Fed. R. Crim. P. 16(b)[.]" Local Rule 116.1(b).

cross-examination] an inquiry into relevant specific instances of the person's misconduct." Fed. R. Evid. 405(a). *Michelson*, 335 U.S. 469, the preeminent authority on issues regarding character testimony, includes the following discussion about the scope of cross-examination of character witnesses:

> The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.  The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat — for it is not the man that he is, but the name that he had which is put in issue.  Another hazard is that his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion.  It may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate.  Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.

*Id.* at 479. Rule 405(a) codified the Supreme Court's rationale in *Michelson*. *See also Kinsella*, 545 F.Supp.2d at 161 ("A defendant introduces reputation evidence at a price").

Thus, if a defendant presents character witness testimony (for example, that the witness is aware of the defendant's character for truthfulness or law-abidingness), on cross-examination, the government should be able to ask if the witness has "heard" whether the defendant committed other relevant acts about which the government has a good faith basis to inquire. *Kinsella*, 545 F.Supp.2d at 161 (citing *United States v. Monteleone*, 77 F.3d 1086, 1090 (8th Cir. 1996)); *see also United States v. Kellogg*, 510 F.3d 188, 196 (3d Cir. 2007) ("Generally speaking, a person testifying regarding a present opinion should be open to cross-examination on how additional facts would affect that opinion").

### C. Evidence and Argument Regarding Potential Punishment Must Not Be Considered by the Jury.

Counsel for the defendants have agreed that they will not present evidence or argument regarding the potential length of sentence the Defendants are facing, and it is the government's position that any reference to a potential sentence, whether of imprisonment or financial consequences, would be improper. It is well established that a jury should not consider punishment as it contemplates the guilt or innocence of a criminal defendant. *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("when a jury has no sentencing function it should be admonished to 'reach its verdict without regard to what sentence might be imposed'") (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). As made clear by the Supreme Court, this principle:

> is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

*Shannon*, 512 U.S. at 580 (citations omitted). Accordingly, the government requests that the Court preclude *any* reference to a potential sentence during the guilt phase of this trial.

### CONCLUSION

Accordingly, the government respectfully submits that the Court should order *in limine* to exclude any evidence, argument, or reference to: (1) the matter involving the arrest of the daughter of a Massachusetts district court judge, and the initial reporting of information to federal investigators; (2) specific instances of good acts, commendations, and other accomplishments of Pullman as a police officer or union president and/or Lynch as a lobbyist; and (3) potential punishment.

Respectfully submitted,

```
                              RACHAEL S. ROLLINS
                              United States Attorney

                    By:       /s/ Neil Gallagher
                              Neil J. Gallagher, Jr.
                              Kristina E. Barclay
                              Assistant U.S. Attorneys
```

Date Submitted: August 22, 2022

## CERTIFICATE OF SERVICE

I hereby certify that this document filed under seal has been emailed to counsel of record.

```
                              /s/ Neil J. Gallagher, Jr.
                              Neil J. Gallagher, Jr.
```