UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-cr-10345-DPW |
| | ) | |
| ANNE M. LYNCH, | ) | |
| Defendants | ) | |

DEFENDANT'S SENTENCING MEMORANDUM
AND REQUEST FOR DEPARTURE AND/OR VARIANCE

---

Defendant, Anne M. Lynch ("Anne or Lynch"), respectfully submits this sentencing memorandum and request for departure and/or variance with attached letters of support to assist the Court in crafting a sentence that is sufficient, but not greater than necessary, to satisfy the sentencing purposes contained in 18 U.S.C. § 3553. Anne comes before this Court as a humbled and remorseful ███████ woman. A woman who, other than the events in this case, has lived an exemplary life. As demonstrated by her letter and the letters submitted to this Court by Anne's family, friends, and clients, she has lived a remarkable life. *See* Exhibits "A-1" – Exhibits "A-32" and Exhibit "B" attached hereto. The themes that run through these letters are the same; she is devoted to her family, friends, clients, and community. She is charitable with her time and resources. She is respectful, honest, trustworthy, and extremely loyal to a fault. She has been a trailblazer in the lobbying field, a field dominated by men, and a mentor to many women. She comes before this Court determined to make amends, to pay her debt to society and to be a better person and role model for her grandchildren in the future.

Anne is not a typical defendant, and the nature and circumstances of her convictions are not a typical racketeering case.  Indeed, this case is well beyond the heartland of the typical racketeering case.

Anne accepts the jury's verdict and has acknowledged her lapses in judgment. Nevertheless, there are some defendants who do not have to be incapacitated to be rehabilitated.  Anne is a defendant who does not need to be imprisoned, especially when incarceration will be detrimental to her health and the health of her partner who has no one, other than Anne, to provide him with the critical medical care he needs daily.

More importantly, a sentence of incarceration is unnecessary and will not serve the purposes of sentencing.  Given the totality of the circumstances in this case, a sentence of incarceration will be inconsistent with the purposes of sentencing.

Anne has already suffered her greatest indignity.  She has lost forever the reputation she spent 40 years of her life building; her reputation for honesty, integrity, and obedience to the law.  A sentence of incarceration will only further shame a woman who has been completely humiliated.

For the myriad of reasons which follow, the defense respectfully suggests that a non-guideline, non-incarceration sentence is warranted in this atypical case, and requests a sentence of probation and community service. Alternatively, if the Court decides that a sentence of confinement is necessary, then the defense respectfully suggests that a substitute sentence of home confinement with community service will

satisfy the purposes of sentencing and allow her to continue to care for her partner.

I.     <u>HISTORY AND CHARACTERISTICS OF ANNE LYNCH</u>.

Anne Lynch was born in Boston





II.    <u>ADVISORY GUIDELINE CALCULATION</u>.

Anne Lynch objects to the calculation of the Advisory Guideline calculation contained in the Presentence Investigation Report ("PSR").  Specifically, Lynch objects to using "intended loss" as the guideline measure of loss because Lynch did not intend any losses.

Rather, Lynch submits that the proper measure of loss in this case is the actual loss and that the actual loss for Group 1 (RICO [Honest Services Wire Fraud; Wire Fraud; Obstruction of Justice]) is $30,000.00 for the $20,000 paid to defendant Pullman for the DOL contract, the $5,000 paid to Pullman for the Mark43 contract and the $5,000 paid to Pullman for the Taser contract.

A. Intended Loss is not the proper measurement of loss in this case.

The Guidelines define "loss" as "the greater of actual or intended loss." U.S.S.G. § 2B1.1, cmt. 3(A). "Since intended loss normally subsumes actual loss, intended loss is often the greater of the two." *United States v. Flete-Garcia,* 925 F.3d 17, 28 (1st Cir. 2019).

However, the Guidelines define "intended loss" as "the pecuniary harm that the defendant purposely sought to inflict." This definition was added by an Amendment to U.S.S.G. § 2B1.1 in 2015. [T]he Sentencing Commission amended § 2B1.1 to clarify that the "intended loss" inquiry must focus on the degree of 'pecuniary harm that the defendant purposely sought to inflict' through his conduct." U.S.S.G. § 2B1.1, amend. 792. *See United States v. Carrasquillo-Vilches,* 33 F.4th 36, 43 (1st Cir. 2022). As a result of this amendment, the Court is "obliged to use a subjective standard to determine intended loss." *Id.*

In this case, the government did not present any evidence that Lynch intended to cause a loss to the Commonwealth, SPAM, Mark 43, or Taser. Indeed, nowhere in the PSR's description of the Offense Conduct is there any mention that Lynch

purposely sought to inflict pecuniary harm on any entity.  Moreover, using intended

loss instead of actual loss will fly in the face of First Circuit precedent.

> In calculating loss based on fraud, the First Circuit has long recognized:

> that there are two types of fraud:  "The first type of fraud implicates the 'true con artist,' … who intends only to pocket the money without rendering [anything] in return.  The second type of fraud involves a person who would not have attained the contract or loan but for the fraud, but who fully intends to perform."

> *United States v. Blastos,* 258 F.3d 25, 30 (1ST Cir. 2001)(quoting *United States v. Haggert,* 980 F.2d 8, 12-13 (1st Cir. 1992); *see also United States v. Smith,* 951 F.2d 1164, 1167 (10th Cir. 1991)("A thief who steals $100,000 is more culpable than a salesman who obtains $100,000 by selling a victim an $80,000 house he fraudulently represents as being worth $100,000.  In the latter case, it makes no sense to suggest that $100,000 is the accurate measure of the victim's loss.").  *See United States v. Prange,* 771 F.3d 17, 36 (1st Cir. 2014).

Holding Lynch responsible for the full amount of the fraudulent transactions would

render the distinction between these two types of fraud illusory.  Stated another way,

because Lynch never intended to cause any loss, applying the subjective intended loss

measurement to this case would render the distinction between these two types of

fraud illusory.

Moreover, assuming arguendo that the intended loss measurement does apply,

the PSR calculation is nevertheless erroneous because it does not reduce the loss by

the fair market value of the services rendered by Lynch and other persons acting

jointly with her.  *See* U.S.S.G. § 2B1.1 at cmt. 3(E)(i)("Loss shall be reduced by … the

fair market value of the property returned, and the services rendered, by the

defendant or other persons acting jointly with the defendant, to the victim before the

offense was detected.")

In this case, it is indisputable that Lynch and Lynch Associates provided valuable services to SPAM, Mark 43, and Taser. Lynch and her firm negotiated a settlement for SPAM for more than $30 million dollars. Lynch and her firm also provided Mark 43 and Taser with valuable services. Indeed, prior to the government's investigation, neither party expressed any dissatisfaction with the services, or the value of the services provided by Lynch and her firm. By applying the intended loss measurement without further calculating the fair market value of the services rendered by Lynch and her firm to SPAM, Mark 43 and Taser and without reducing the intended loss amount by the fair market value of the services rendered, the PSR greatly overstates the amount of the loss. *See Prange, supra* at 37.

Finally, using the intended loss measurement will result in restitution orders that will generate windfalls for the Commonwealth, Mark 43, and Taser. Under the Mandatory Victims Restitution Act ("MVRA"), defendants convicted of certain crimes must make restitution to their victims to compensate the victims for their actual losses. *See United States v. Naphaeng,* 906 F.3d 173, 179 (1st Cir. 2018). An "actual loss" in the MVRA context "is 'limited to [the] pecuniary harm that would not have occurred but for the defendant's criminal activity.'" *United States v. Simon,* 12 F.4th 1, 64 (1st Cir. 2021)(alteration in original)(quoting *Naphaeng, supra* at 179). For this purpose, intended loss will not suffice. *Naphaeng, supra* at 179.

As a general matter, restitution orders should not generate windfalls. After all, the principal goal of restitution is "to make the victim whole again," (citation omitted) and "an order for restitution ought not to confer a windfall upon a victim"

7

(citation omitted). *Carrasquillo-Vilches, supra* at 46. Applying an intended loss measurement without reducing the amount by the fair market value of the services rendered by Lynch and her lobbying firm will result in a windfall to the victims in this case.

For these reasons, the Court should not apply the intended loss measurement but, instead, should apply the "actual loss" or reasonably foreseeable pecuniary harm that resulted from the offenses at issue. Reasonably foreseeable pecuniary harm is the harm that the defendant "knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *See* U.S.S.G. § 2B1.1 at cmt. 3(A)(iv). Defendant submits that the reasonably foreseeable pecuniary harm in connection with honest services wire fraud and wire fraud counts was the $30,000.00 paid to Mr. Pullman.

B. Defense Re-Calculation of Advisory Guideline Range "AGR").

Assuming the Court agrees that actual loss is the measurement to be applied under the Guidelines, then the proper calculation of the AGR will be as follows:

| | |
|---|---|
| **Counts 1-5, 8 and 9 (Group 1): RICO** | |
| **Base Offense Level:** | 19 |
| **Counts 10, C & D (Group 2): Tax Counts** | |
| **Base Offense Level:** | 12 |
| **Adjusted Offense Level:** | 12 |
| **Multiple Count Adjustment: (§3D1.4)** | |
| **Group One:** | 1.0 |

| Group Two: | 0 |
|---|---|
| Total Number of Units: | 1.0 |
| Greater of the Adjusted Offense Levels: | 19 |
| Increase in Offense Level: | 0 |
| Combined Offense Level: | 19 |
| Total Offense Level: | 19 |

Because Anne's criminal history is Zero, her AGR is 30-37 months of imprisonment.

However, on April 27, 2023, the Sentencing Commission delivered guideline amendments to Congress for its 180-day review period. The 2023 amendments will go into effect on November 1, 2023, absent congressional action to the contrary. The 2023 amendments include an adjustment for certain zero-point offenders in U.S.S.G. § 4C1.1. The adjustment contained in § 4C1.1 reduces the offense level by 2 levels. Applying this new guideline will reduce her AGR to 24-30 months of imprisonment.

III. SENTENCING FACTORS AND GROUNDS FOR DEPARTURE OR VARIANCE.

18.U.S.C. § 3553(a) instructs this Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2): retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); specific and general deterrence; incapacitation ("to protect the public from further crimes of the defendant"); and rehabilitation ("to provide the defendant with needed

educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See* 18 U.S.C. § 3553(a).

Fortunately, the Sentencing Guidelines are advisory. *United States v. Booker*, 543 U.S. 220, 245-67 (2005). Post *Booker*, the Guidelines are only one factor considered by the Court. This Court is obligated "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States,* 552 U.S. 38, 53 (2007) (quoting *Koon v. United States*, 518 U.S. 81(1996). Given all the circumstances in this case, the defense respectfully submits that a non-guidelines non-incarceration sentence is clearly warranted.

A. 18 U.S.C. § 3553(a)(1): History and Characteristics of the Defendant.

As articulated above, the same adjectives have been used by friends, family, and clients to describe Anne as a "devoted sister, mother, and grandmother"; and a "loyal"; "hardworking"; "dedicated"; "self-less" individual. Indeed, the crimes for which she has been convicted are aberrations in a life otherwise well-lived.

1. Extraordinary Family Responsibilities

A sentence of incarceration is not warranted in this case. A sentence of incarceration would have a destructive effect on innocent victims - not only on Anne's immediate family, ███████████████████████████████████████

*See* U.S.S.G §5H1.6 (which provides that in certain circumstances family ties and responsibilities may warrant a downward departure where service of a sentence will cause substantial and special loss of essential care). Such a departure was supported

by the First Circuit even before *Booker. See United States v. Roselli*, 366 F. 3d 58, 67-70 (1st Cir. 2004); *United States v. Sclamo*, 997 F. 2d 970, 974 (1st 1993); *United States v. Rivera*, 994 F.2d 942, 953-954 (1st Cir. 1993)(court has discretion to depart where family circumstances are unusual or out of the ordinary).

Moreover, other districts have considered downward departures-based family circumstances.  In *United States v Milikowsky*, 65 F.3d 4, 7-8 (2nd Cir. 1995) the court opined "Among the permissible justifications for downward departure…is the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties." *See also United States v. Galante,* 111 F.3d 1029 (2nd Cir. 1997)(where the court significantly departed from the guidelines (46-57 months) to 8 days where the defendant demonstrated that he was a conscientious and caring father of two young sons who would have faced severe financial hardship); *United States v. Dominquez,* 296 F.3d 192, 194-95 (3rd Cir. 2002) (where defendant resided with her elderly parents, who were physically and financially dependent upon her); *United States v. Baker*, 502 F. 3d 465, 467-70 (6th Cir. 2007)(where the court departed from the guidelines range of 27-33 months to a sentence of probation with 12 month house arrest because "…the defendant shares the burden of providing constant care" for his son who was a heart transplant recipient); *United States v. Husein*, 478 F.3d F. 3d 318, 324-28 (6th Cir. 2007) (where defendant was solely responsible to a significant extent for the physical and financial support of her family); *United States v. Bueno,* 549 F.3d 1176, 1178-82 (8th Cir. 2008)(where a downward departure from a guidelines sentence of 108-135

11

months to probation with house arrest for five years was not unreasonable due to wife's illness and dependence on defendant).

As stated in ¶88 of the PSR: Anne's sister stated that "currently, the defendant is the primary caretaker and financial support for her boyfriend, who requires daily physical care. She added that she is also concerned for her sister's physical health as she is in need of a knee replacement and has other issues that need to be addressed." Moreover, Doctor ████████████████████████ letter dated March 14, 2023, states that:



*See* Exhibit "C".

As is evidenced by Doctor ███████████████'s letter, Anne is irreplaceable ██████████████████████████████. Thus, a departure or variance based on extraordinary family responsibilities is warranted in this case.

    2.    Anne's Age.

Age is another basis for a departure or variance. Anne is ██████████.

U.S.S.G. § 5H1.1 states:

Age (including youth) may be relevant in determining whether a departure is warranted, if considerations on age, individually or in combination with other offender characteristics, are present to an

> unusual degree and distinguish the case from the typical cases covered
> by the guidelines.  Age may be a reason to depart downward in a case in
> which the defendant is elderly and infirm or where a form of punishment
> such as home confinement might be equally efficient as and less costly
> than incarceration.

Elderly offenders, whether seriously infirm, suffer greater punishment in prison because they are at risk of being preyed upon by younger inmates and lack social support. *See Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, U.S. Department of Justice, National Institutes of Corrections, p. 9-11 (2004 ed.), available at 018735.pdf.

Moreover, it is well established that the risk of recidivism drops dramatically in defendants who are forty and older, which lessens the need to protect the public from further crimes of the defendant pursuant to 18 U.S.C. § 3553(a)(2)(C).  *See* United States Sentencing Commission, *Older Offenders in the Federal System* (July 2022), p. 43 Older Offenders in the Federal System (ussc.gov) (The recidivism rate of older offenders (21.3%) was less than half that of offenders under the age of 50 (53.4%). Older offenders also had a small median number of recidivism events (one), compared to offenders under the age of 50 (three). Older offenders also had a longer median time to recidivism (20 months), compared to offenders under the age of 50 (19 months).

Also, in 28 U.S.C. § 994(j) Congress directed the Sentencing Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense…."  Under

the guidelines applicable in this case, the Sentencing Commission has not done so. Rather, the guidelines only suggest that a non-violent offender with an applicable guideline range in Zone A or B should be considered for imposing a sentence other than imprisonment.  *See* U.S.S.G. § 5C1.1, Application Note 4.

Given the unique circumstances surrounding this matter, the defense respectfully submits that a non-guideline non-incarceration sentence of either probation, or a sentence of home confinement, with a community service component will satisfy the goals of sentencing that "[t]he punishment should fit the offender and not merely the crime."  *Williams v. New York,* 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949).

B.  18 U.S.C. § 3553(a)(1): The Atypical Nature and Circumstances of Offense.

Suffice to say, this case is not your typical racketeering conspiracy.  Indeed, the government's use of the racketeering statute in this white-collar prosecution is unusual to say the least.

Moreover, recently the United States Attorney's Office in this District has prosecuted other typical racketeering cases.  The MS-13 racketeering case and, more recently, the Latin Kings racketeering case come to mind.  Just because a jury was persuaded that defendants participated in a racketeering conspiracy does not change the fact that this is an atypical racketeering case that is outside the "heartland" of racketeering cases.  *See* U.S.S.G. § 5K2.0.

C.  18 U.S.C. § 3553(a)(2): Need for the Sentence

Although Anne understands that she has been convicted of a serious crime deserving of punishment, a non-custodial sentence of probation or home confinement is more than sufficient to accomplish the statutory objectives of sentencing.

With regards to retribution, a prison sentence would devastate Anne's family, and destroy her ability to care for her partner's health care needs.  A sentence of home confinement will certainly provide a sufficient measure of punishment.  As the letters submitted by family, friends and customers evidence, Anne and her family have suffered immensely because of this case.  The shame that this case has brought to her, and her family has been unbearable.  *See* <u>Exhibit "B"</u>.  The collateral consequences suffered by Anne and her family serve as more than adequate punishment in and of itself.

With regards to deterrence, a prison sentence would serve no constructive purpose.  Anne is an otherwise law-abiding citizen and will never again engage in the type of activities which led to her conviction.  For a woman like Anne Lynch, no form of punishment is more incalculable than the damage done to her good name and business reputation.  Disgrace is a potent punishment, and a powerful deterrent to others in similar circumstances considering a similar crime.

Finally, the last two objectives of sentencing, incapacitation, and rehabilitation, also do not countenance a prison sentence in this case.  There is not one person who could legitimately argue that Anne Lynch poses a threat to the community.  Far from it.  Letter after letter attests to her contributions to others.

Similarly, there is no need for rehabilitation.  Anne has not led the life of a criminal.  She has deep roots in her community.  She has expressed regret and remorse to family, friends, and clients alike.  There is no risk that she will recidivate.

D.  <u>18 U.S.C. § 3553(a)(3): Kinds of Sentences Available</u>

The Court is free to impose a myriad of sentencing options, including probation, home detention, and community service.  USSG §§ 5F1.1-5F1.3.  If, however, the Court decides that a term of imprisonment is necessary in this case, Anne respectfully requests that it be a term of home confinement with limited release so that she may continue to provide ███████████████.  *See* USSG § 5F1.2.  Home confinement will significantly restrict her liberty and provide retribution while still allowing her to help care for her partner.

Pursuant to USSG §§ 5F1.3, the court could additionally consider a sentence of community service.  A sentence of community service would allow the community to benefit in a direct and tangible way from Anne's conviction and sentence.  *See United States v. Tomko*, 562 F.3d 558, 571-572 (3rd Cir. 2009) (affirmation of community service sentence where defendant had a long history of charitable works and ties to the community.).

E.  18 U.S.C. § 3553(a)(4): Kinds of Sentences and Sentencing Range for the Category of Offense Committed.

Pursuant to the PSR, probation has determined the applicable Guidelines range to be 51 months to 63 months.  (PSR ¶ 117) This range is driven solely by the alleged intended amount of loss as alleged by the government. (PSR ¶ 51B)  However, it is clear that the intended loss substantially overstates the seriousness of the offense for sentencing purposes.

1. The Loss Attributable To Anne Substantially Overstates The Seriousness Of Her Conduct.

The loss set forth in the PSR presumes that Anne alone is responsible for the entire amount of loss specified in the loss range selected by the sentencing court. *See United States v. Shattuck*, 961 F.2d 1012, 1016 (1st Cir.1992) (quoting *United States v. Gregorio*, 956 F.2d 341, 347 (1st Cir.1992)).  Anne's sentence is largely determined by the 12-level increase on an incorrect loss amount. As has been recognized, though, "with their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to personal culpability." *United States v. Milne*, 384 F. Supp. 2d 1309 (E.D. Wisc. 2005). *See also, United States v. Stuart*, 22 F. 3d 76, 83 (3rd Cir. 1994) ("in a few circumstances, strict application of the loss tables can overstate the seriousness the of the offense").

The commentary to § 2B1.1 notes that "there may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense" and that in "such cases, a downward departure may be warranted." USSG § 2B1.1, Application Note 21(C); *See also, United States v. Costello*, 16 F. Supp. 2d 36, 40 (D. Mass. 1998)("I conclude that in this situation a downward departure is

warranted because the $20 million loss figure substantially overstates the defendant's culpability."). With the greater discretion afforded courts by the decision in *United States v. Booker*, courts have also granted variances in cases where the loss amount overstated the defendant's responsibility. *See, e.g., United States v. Ranum*, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005) (where the court "found the guideline range, which depended so heavily on the loss amount, greater than necessary"); *United States v. Watt*, 2010 WL 1676439, *16 (D. Mass. April 27, 2010) (where the court imposed a below-guidelines sentence recognizing that the guidelines scheme, which effectively makes loss "a proxy for evaluating culpability," was not always appropriate). In this case, the loss attributable to Anne substantially overstates the seriousness of her conduct. Accordingly, the Court should depart or vary from the guideline range.

F.   18 U.S.C. § 3553(a)(5): Pertinent Policy Statements

Multiple studies on the effect of harsh sentences in white collar criminal cases have determined that lengthy sentences do not yield significant deterrence. "There is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders." Zvi D. Gabbay, *Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-448 (2007). "[I]ncreases in severity of punishment [for white-collar criminals] do not yield significant (if any) marginal deterrent effects…. Three National Academy of Science panels…reached that conclusion as has every major

survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006).

Anne is a first-time offender, which is a substantive factor in the determination of sentence. Stated Judge Gertner "[there is] a demonstrable difference in the recidivism rates of first-time offenders as compared to other defendants in Criminal History Category I." *United States v. Germosen,* 473 F. Supp. 2d 221, 227 (D. Mass. 2007) The Sentencing Guidelines additionally direct courts to "consider imposing a sentence other than a sentence of imprisonment" for certain first-time offenders. U.S.S.G. § 5C1.1. Application Note 4.

G. 18 U.S.C. § 3553(a)(6): Need to Avoid Unwarranted Sentence Disparities

A sentence of home confinement is justified in this case to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. The courts have routinely imposed below Guidelines sentences, even with significant losses, recognizing that the loss upon which the Guidelines rely can be a poor gauge of culpability. Here, the downward departure and variance proposed by the defense is consistent with recent tax cases in this District:

- *United States v. Panousos,* 17-Cr.-10227-DPW, three defendants (father, mother, and son) pleaded guilty to conspiracy to defraud the United States, and the father pleaded guilty to three counts of aiding and assisting in the filing of false corporate and individual returns. The defendants were ordered to pay $2 million in fines and restitution, and the Court sentenced the defendants to three years of probation. *See* ECF 52.
- *United States v. Le,* 17-Cr-10069-GAO, the defendant pleaded to one count of willful failure to pay over pursuant to 26 USC 7202. The Guidelines called for a sentence of 37 to 46 months, the defendant was sentenced to four years of probation, one year to be served in home confinement. *See* ECF 81.

19

- *United States v. Rapoza,* 18- Cr-10316-RGS, the defendant pleaded to one count each to 26 USC 7202 and 26 USC 7206, which carried a Guidelines recommendation of 18-24 months, and was sentenced to three years of probation, with the first six months to be served in home confinement. *See* ECF 29.

- *United States v. Tutunjian,* 16-Cr-10225-DPW, the defendant pleaded to four counts, which included failing to pay approximately $5 million in federal taxes. Each count carried a Guidelines sentence of 24 to 30 months.   The court ultimately sentenced him to eighteen months in a halfway house.  *See* ECF 35.

- *United States v. Holland,* 18-Cr-10370-MLW, the defendant pleaded to two counts of tax fraud, with a Guidelines sentence of 24-30 months each. The court sentenced her to 6 months, with a restitution order of $1,126,112.  *See* ECF 33.

- *United States v. O'Connell,* 18-Cr-10370-MLW, the defendant pleaded to two counts of tax fraud, with a Guidelines sentence of 24-30 months each. The court sentenced her to 6 months, with a restitution order of $1,126,112.  *See* ECF 33.[1]

---

[1]*See also United States v. Ingram,* 18-Cr.-10018-RWZ, the defendant was charged with filing false returns pursuant to 26 USC 7206. The Guidelines called for a sentence of 12-18 months, the ultimate sentence was three years of probation and restitution. *See* ECF 45; *United States v. Patel,* 18-Cr-10353-DPW, the defendant pleaded to conspiracy to commit tax fraud and was sentenced to one year of probation. *See* ECF 14; *United States v. Kinslieh,* 18-Cr-10351-LTS, the defendant pleaded to one count pursuant to 26 USC 7206 and was sentenced to probation. *See* ECF 20; *United States v. Toltin,* 11-Cr-10084-JLT, the defendant pleaded to one count each under 26 USC 7212(a)(Obstructing and Impeding Justice Due Administration of the Internal Revenue Service Laws), 26 USC 7201(Tax Evasion) and  26 USC 7203(Willful Failure to File Tax Returns) each count carrying a sentence under the Guidelines of 18 to 24 month; The defendant was sentenced to five years of probation, with nine months of home confinement.  *See* ECF 22; *United States v. Altavilla,* 12-cr-40052-TSH, the defendant pleaded to one count of tax evasion pursuant to 26 USC 7201. The Guidelines called for 18 to 18 months, the court sentenced him to two years of probation, six months to be served in home confinement.  *See* ECF 16; *United States v. Rogers,* 18-Cr-40026-TSH, the defendant pleaded to one count under 26 USC 7206, with a Guidelines range of 18-24 months, and received a sentence of six months with restitution. *See* ECF 46; *United States v. Scuderi,* 19-Cr-30020-MGM, the defendant pleaded to one count under 26 USC 7203 with a guidelines range of 12-18 months and received a sentence of six months with restitution.  *See* ECF 20; *United States v. Kalantzis,* 18-Cr-10148-WGY, the defendant pleaded to 26 USC 7206, with a Guidelines range of 18-24 months, and the court sentenced him to twelve months + 1 day, with restitution. *See* ECF 16;

The above sentences are also consistent with sentences imposed nationally.[2]

H.   18 U.S.C. § 3553(a)(7):  Need to Provide Restitution

The defense agrees with Probation that the Court should determine the amount of restitution owed to the victims in this case.  However, Anne objects to the excessive, unnecessary, and unforeseeable expenses and attorneys' fees requested by Mark 43 as restitution.  First, Anne challenges attorneys' fees as a category of expenses that is reimbursable under the Mandatory Victim Rights Act as "necessary … other expenses."   Second, the hourly rates requested are clearly excessive and unreasonable.   Third, many of the fees requested were unnecessary and unforeseeable and, therefore, are not reimbursable.  *See Akebia Therapeutics, Inc.*, 981 F.3d 32 (1st Cir. 2020).  Accordingly, the Court should reject Mark 43's request for restitution for its attorneys' fees in full especially where Mark 43 has other civil remedies.

Finally, the Court may depart or vary from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, if (1) such offender characteristics or other circumstances, taken together, make the case an exceptional one; and (2) each such offender characteristic or other circumstance is (A) present to a substantial degree; and (B) identified in the

---

[2] *See United States v. Tomko, supra* at 571-73 (where the court imposed a sentence of probation and community service where the Guidelines range was twelve to eighteen months based on the defendant's negligible criminal history and record of charitable work; *United States v. Noriega*, No. 16 Cr. 00019 (D.R.I. filed Mar. 8, 2016) at ECF 17 (defendant sentenced to two years of probation for personal income tax evasion and failure to pay employment tax, where the tax loss was in excess of $400,000.

guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.  U.S.S.G. § 5K2.0(c).  In the present case, Anne submits that her offender characteristics and other circumstances, when taken together, make this case an atypical and exceptional one that warrants a departure or a variance down to Zone A.

IV.   A SENTENCE OF PROBATION WITH COMMUNITY SERVICE OR A SENTENCE OF HOME CONFINEMENT WITH COMMUNITY SERVICE IS SUFFICIENT IN THIS CASE.

Under past practice, the threshold question in most cases was whether to impose a sentence of imprisonment.  The relevant considerations were whether public safety required incarceration, what the defendant's risk of recidivism was, what his treatment and medical needs were, and what collateral effects imprisonment would have on family and employment.

Congress expected that the threshold question in most cases would continue to be whether probation was sufficient or whether prison was necessary.  In 18 U.S.C. § 3582(a), Congress instructed:

> The court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Thus, Congress intended that probation would be used with at least the same frequency as before the guidelines.  Indeed, Congress even identified when probation should be the presumptive sentence.  28 U.S.C. § 994(j) instructed the Commission to

22

ensure that the guidelines reflect the "general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense."

Probation with community service or home confinement with community service for a ███████ woman will not be an easy sentence. Anne will be reminded every day that she is being punished. Also, she will be required to pay restitution, which will serve as an additional reminder that she is being punished and is being required to pay her debt to society.

Anne has already been punished by losing what is most precious to her - good name and reputation. Indeed, Anne has endured the humiliation and embarrassment of her crimes each time she saw her name and picture in the newspaper.

In addition, a sentence that is excessive considering the seriousness of Anne's role in the offenses at issue will promote disrespect for the law and provide unjust punishment. The seriousness of an offense may be lessened, for example, when the crime was a non-violent offense. Moreover, an offense can be considered less serious if a defendant's motives were not entirely egregious or if no actual loss was intended. In this case, Anne's motives, while ultimately misguided, also included the good motive of helping others. Thus, considering the actual seriousness of the offenses in this case, a sentence of probation or home confinement will promote respect for the law and provide just punishment.

Accordingly, a sentence of probation or home confinement with a community service component is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Incarceration or incapacitation of Anne is not necessary to deter her in the future. Incarcerating Anne is not necessary to deter others in the future. Indeed, while some believe that the higher the sentence, the greater effect in deterring others, the empirical evidence shows no relationship between sentence length and deterrence. Indeed, in one of the best studies of specific deterrence, which involved federal white-collar offenders in the pre-guideline era, no difference in deterrence was found even between probation and imprisonment. *See* David Weisburd, et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). Offenders given prison sentences were no more or less likely to reoffend than those given probationary sentences. As such, a sentence of probation or home confinement will be an adequate deterrent in this case.

Without repeating what is stated above, the chances of Anne recidivating are non-existent. Indeed, her conduct in this case is completely outside the heartland of her character.

A sentence of probation or home confinement will allow Anne to pay the restitution amount determined by the Court. If the Court imposes the sentence the government has requested, Anne will likely not have the ability to pay any restitution to the victims in this case.

V.     <u>CONCLUSION</u>.

For all the reasons set forth above, undersigned counsel respectfully submits that, in this atypical case, a sentence of probation with community service or home confinement with community service; (2) no fine; (3) the required special assessments ($1,000.00); (4) restitution in the amount found by the Court after a restitution hearing; and (5) any additional conditions the Court deems necessary to satisfy the sentencing purposes set forth in 18 U.S.C. § 3553(a) is a reasonable and just sentence under the totality of the circumstances in this case.

Respectfully submitted,
For the Defendant,
Anne M. Lynch
By her attorneys:


  /s/ Scott P. Lopez
Scott P. Lopez, BBO # 549556
LAWSON & WEITZEN, LLP
88 Black Falcon Ave, Suite 345
Boston, MA 02210
617-439-4990 (tel.)
617-439-3987 (fax)
splopez@lawson-weitzen.com

Dated: May 3, 2023

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 3, 2023.

  /s/ Scott P. Lopez
Scott P. Lopez
